allows you to be there. I know you'd rather be here, but we understand and we're looking forward to it. And I think there's a screen so that all in the courtroom can see and hear you. Let's do a little test run. Good morning, and thank you very much for accommodating my request to proceed by video. Absolutely. No worries. And go ahead, if you would, and tell us before you begin. How much time would you like for rebuttal, please? I'd like to reserve four minutes for rebuttal. Very well. Thank you. Go ahead, please. Good morning. May it please the court, Samantha Stern, Assistant Federal Public Defender, on behalf of Mr. Henderson. And I'd like to reserve four minutes. Pennsylvania conspiracy does not qualify as a crime of violence under the sentencing guidelines. And that's because the Elements Clause asks whether the offense has, as an element, used, attempted use, or threatened use of force. Pennsylvania conspiracy has, at most, elements requiring an intention and an agreement to use, attempt, or threaten force. These elements fall short of what the guideline text requires. The government has conceded elsewhere that conspiracy offenses do not satisfy the Elements Clause, but here singles out Pennsylvania conspiracy for anomalous treatment. Its only authority is Preston, a 1990 ACCA decision with a rationale and a holding that directly conflict with finding Supreme Court precedent. So tell us, if you would, how can Preston and Abreu be reconciled in a manner that presents no conflict? I don't think they can be. Abreu interpreted the guideline text and the commentary, concluded that the guideline text, the Elements Clause, clearly excludes conspiracy offenses, and because of that, went on to consider the commentary, which purports to include conspiracy offenses, and determined that it was not entitled to deference after Kaiser and this court's decision in this year applying Kaiser in the guideline context. So I don't think, and I guess, moving on then to what Preston held. So in Preston, looking specifically at Pennsylvania conspiracy, a panel of this court considered that in the Pennsylvania conspiracy context, the jury is instructed as to the elements of the object of offense, and indeed needs to agree about what the object of the conspiracy is, but went on to hold, and this was the fatal flaw, that because of that, the Pennsylvania conspiracy elements subsume the Pennsylvania robbery elements for purposes of the categorical analysis. That is the problem with the analysis, and that's because the categorical approach begins and ends with the elements of the statute of conviction. You're a Pennsylvania conspiracy. So whatever the jury might be instructed, at the end of the day, to reach a finding of guilt on Pennsylvania conspiracy, they need only find an intention to undertake the object of offense. The government seems to believe that Preston has to be directly overruled before we can turn away from the precedent that he said. Is that a correct interpretation? This court has a couple of options. As it recognized in Tan and other cases cited in my brief, this panel can decline to follow Preston if it agrees that its holding is directly in conflict with Supreme Court precedent, which finds this panel. So that is certainly one way to address Preston and find that it does not apply in this case. Another option is to take this case on box and consider Preston's continued vitality that way. But I submit it's really not necessary here. Given this panel's duty to apply binding Supreme Court authority, applying the categorical approach, Preston must give way. And I can submit the would be based on the Mathis decision from 2016 and also the Supreme Court's decision in Taylor from this year. And certainly there are numerous cases applying the categorical approach, but these two in particular stand out as having a direct conflict with Preston. Mathis, because it defines the elements as the things the jury must find beyond a reasonable doubt. Pennsylvania robbery elements are clearly not elements of Pennsylvania conspiracy because the jury in a conspiracy case does not need to find the elements of robbery. And the Taylor decision from this year. In that case, the court looked at attempted Hobbs Act robbery and critically kept to the elements of the attempt offense. And so certainly if there was an opportunity for the Supreme Court to undertake a sort of subsuming analysis, like this court did in Preston, Taylor presented the perfect opportunity. And that's because in an attempted Hobbs Act robbery case, the jury is instructed as to the elements of the completed Hobbs Act robbery, and indeed needs to find an intention to complete the Hobbs Act robbery. Nonetheless, the Supreme Court said, what we have here is an intention and just that it's not sufficient under the elements clause. It's not the same thing as an element of the use, attempted use, or threatened use of force. And so there's no way to reconcile the Supreme Court's recent analysis of that inchoate offense in Taylor with this court's analysis of the inchoate offense of Pennsylvania conspiracy in Preston. And so I- Is there any basis for interpreting or understanding violent felony and crime of violence as synonymous? Well, certainly the elements clause in the Armed Career Criminal Act is the same elements clause that we see in a guideline 4B1.2a. And so this court has always, along with other courts, has always interpreted those elements clause is in parity, which is partially why we think this court needs to address the flaw in Preston here, even though that's an ACCA case and this is a guidelines case. We're dealing with the same elements clause in Preston and in Abreu, and these two interpretations and applications to, in the case of Abreu, New Jersey conspiracy, and in the case of Preston, Pennsylvania conspiracy, they're really directly at odds. But I thought the application notes noted that, just to quote it, it is noted that the definition of violent felony and serious drug offense in 924 are not identical to the definitions of crime of violence and controlled substance offense. So I thought the application notes were drawing a distinction there. Shouldn't we take that into account? Certainly in the context of the Armed Career Criminal Act, crime of violence, and then these other statutes that use the same or similar differences, I would submit that in this case, with this particular issue that's presented, those differences are not germane to the issue that this court must decide, specifically whether Pennsylvania conspiracy has an element of the attempted use or threatened use of force. And so really, yeah, those differences, while they might affect a different case, they really don't have a bearing here. I don't think there's a way for this court to avoid confronting Preston in this case due to its interpretation of Pennsylvania conspiracy. The government will say the way to avoid that is to find that this is waived. So talk to the waiver issue. That argument is very extreme and divorced from this court's case law. Well, wait, hold on. I understand that that's not how you see it, but waiver is the intentional relinquishment of a no right. How does it object to the sentencing? Enhancement didn't acknowledge, I think even accepted the enhancements in the district court. So it seems like it's fairly within the normal understanding of waiver. It's within this court's jurisprudence finding of forfeiture. This court has applied fine error review under materially indistinguishable circumstances. I point this court to Glass. Glass involved repeated concessions that the career offender guidelines applied. Nonetheless, this court applied plain error review on appeal, and that was notwithstanding the government raising waiver arguments. Waiver requires much more than what we have here. Here, there's absolutely no indication from the applying the career offender guidelines here. And that is what's critically required for waiver. The government's cases in support really, they have one case, Robinson, a civil case in which an issue was litigated and someone took a position that they later changed on appeal. That's entirely different from what we have here. There was no litigation on the career offender enhancement, all assumed it applied. And I would note that, you know, any objection really would have been futile at that point. And that's because since this sentencing in 2018, the law has substantially shifted when it comes to interpretation of the commentary to 4B1.2a, and specifically that language that purports to sweep in conspiracy offenses. And so the government's waiver argument really doesn't take account of the intervening change in the law. And this court has recognized in the Sovereign Bank case and other circuits have recognized that an intervening change in the law is an exceptional circumstance warranting consideration on appeal of an issue that was not raised or considered below. Let's assume all that's correct, that it, let's assume that it's a novel question. No one was aware of it. No one had any indication that this was likely to occur, because to do so, you would have had to predict not only Abreu, but Nasir and Kaiser, and go all the way back. And so you would have to make a whole set of inferences about a state of the law that arguably didn't exist. If that's the argument for why there's no waiver, then how is the error plain once you get past waiver? Because when we're looking at whether the error is plain, we're taking the snapshot of today, not the state of the law at the time we were before the district court. Under the Supreme Court's cases in Johnson and Henderson, whether the error is plain is evaluated at the time of appellate consideration. And I submit that the under this court's decision in Abreu and the interpretation of the guidelines in the commentary there, all the interpretive work for the guideline has been done in that case and need not be repeated again here. As for the error in evaluation of the Pennsylvania conspiracy elements, that's actually very straightforward. Looking only at the elements of Pennsylvania conspiracy, it's pretty clear that none of those three elements, the intention, the agreement, or the overt act equal the use, attempted use, or threatened use of force. And finally, the need to address Preston does not make this error any less clear. What we're dealing with in Preston is really the flawed holding that because a jury is instructed on the elements of the object offense, the elements of conspiracy subsume the elements of robbery. That's plainly incorrect. And this court can find plain error under the law that exists today very easily. And the other elements of plain error are easily met here too. The Supreme Court's cases in Molina-Martinez, Rosales-Morales contemplates that this type of guideline error, which affects and leads to a substantial increase in the applicable guideline range, is precisely the type of error that in the normal course will warrant plain error reversal. And so, the error is plain today and it had a substantial effect on this sentence. We ask that this court exercise its discretion under plain error to reverse. That sounded like a summary statement that was ending your argument. We have more. I'm happy to answer more questions. Well, that's great. So, I want to talk to you about polygraph testing. Yeah. So, tell me, as we think about it, one of the things you think about is what's the extent to which or how should you think about Lee and its application here? Does Lee present a sui generis situation that has no application? How broadly was it written? How broadly should it be applied? Yeah. So, when you think about Lee as it polygraph administration in a specific instance as a condition of supervised release, there is some language in Lee that would suggest that it could be applied more broadly. Talk to me about your view of how broadly it can be applied and how broad we should think the holding is and what its applicability is here. Myself and opposing counsel, I believe, search for cases dealing with this condition. And I came up time and time again against the fact that these cases in which this condition has been approved, like Lee, are sex offender cases. And while your Honor correctly notes that there is some language in Lee suggesting that there's sort of more broad approval for this type of thing, there's really no way to sort of divorce that holding and that conclusion from the facts and circumstances presented in Lee and in these other sex offender cases. Well, think about why do you want to administer a polygraph in a sex offender case, right? It's to monitor credibility with regard to past conduct and potentially future conduct, right? As you think about conditions of supervised release, vis-a-vis statements made to probation officers about anything, about drug use, about earnest attempts at employment or obtaining employment, almost anything that any interchange between someone on supervised release and someone who is actually supervising them, there's a credibility determination. Now, I take your point that the problem here is the district court merely talked about general compliance as opposed to a sex offender instance. But if we've lent our imprimatur to the use of polygraphs for compliance in the sex offender area, as you've noted, why shouldn't it be more broadly applied? I think that the concerns that are raised in specifically the sex offender context, the need for public protection from the particular harm posed in the sex offender context is what justifies that greater deprivation of liberty posed by the polygraph condition. I think that if this court approved that in this drug case, which is really sort of an unremarkable, nonviolent drug case, it would be lending its imprimatur to applying that condition in every single case, even though it's never been a standard condition and it's not even listed as a special condition. I think it really arises in part because there's this particular context. But I don't think there's really any, if you go beyond the facts and circumstances of a particular case, there's really no limiting principle that would be applied, certainly if it were to apply it in this case. Because I just don't think that there are any particular public protection goals that a polygraph condition would meet in this type of case, and given Mr. Henderson's particular history. But if the polygraph is limited to a specific area, the public is being put in danger by drug sellers, and this is a man who has repeated history of drug sales and of drug dealers, to make sure that he is not continuing to endanger the public by exposing them to the use of drugs through his sales of the drugs. I think that rationale could be used in any case. I mean, every federal case is serious in its own way and poses its own public harm, otherwise it wouldn't be So in this type of case, as opposed to maybe what might be understood in sex offender cases, or cases posing particular kinds of harm, there's no reason to believe that the other conditions that are in play here are not going to do this work of monitoring, of public protection. Even with only the standard conditions in place, there are plenty of constraints on liberty, plenty of monitoring opportunities, and opportunities to sort of suss out if criminal conduct is recurring. And so, applying the application of this polygraph condition in this case was highly unusual, and more unusual still was the district court's response to the objection, I do this all the time. Well, isn't that important, counsel? I mean, you know, we're sort of, we're trying to figure this puzzle out without the benefit of the district court's guidance as to what the rationale was and how this reported with the 3553A factors. I mean, isn't it difficult for us to figure out what the line should be when we're not sure what the district court was envisioning as to the need, as to why this condition was required? Well, I think the district court spoke to the issue. When the objection was made, that was the opportunity for the district court to articulate the basis for imposing that condition. And all the district court came up with was, I do it all the time, it's to monitor compliance. And so, I don't think sending it back for more clarification is going to get us any further. Well, I mean, I prefer, I understand you would prefer that not happen, but that is normally what we do in sentencing cases where there's an insufficient record as to the justifications for the term imposed, right? I mean, we don't guess, and we don't try to create a new standard of law. We would usually say, you didn't sufficiently consider the factors that might go into the reasonable terms of the sentence, give us some more guidance. And if that doesn't work, then I suppose you would have additional remedies, right? Yes, in certain cases of procedural error, it's the best course is to go back. But here, I think the substantive error is clear. We have a full record as to sentencing. I don't think we're going to have any new basis explored for why this polygraph condition would apply here. I think it would be helpful for lower courts, for this court to speak to whether in Lee, it really meant to approve of polygraph conditions in the normal course. And well beyond a context where there may be specific public protection goals because of the nature of the offense or the history and characteristics of the offender. Well, if the argument was made by the government on remand, a la the hypothetical that we talked about a few moments ago that Judge Roth brought up with regard to drug use, whether you think that's valid or not, if that argument is made and the district court accepted it and said that's the basis for administering the polygraph as a condition of supervised release, at least we'd have, Judge Mady's point is at least in that instance, we'd have something before us. I understand you might not agree with that, but at least we'd have something before us and then we can say, okay, Preston, not Preston, I'm sorry, Lee said this, we choose to, whatever, agree or disagree, whatever the case may be. I guess that's the only point. I understand that point. I just also recognize that in prudent, the court said that conditions with only a tenuous basis violate the statute. And that's all we have here, just a very tenuous basis as far as what the district court articulated when pressed by defense counsel with the objection. And so perhaps in a different case, there might be grounds to assert something more, you know, more specific as far as the basis for such a condition, but here the district court didn't offer that. All right. Thank you so much. We'll hear from you on rebuttal. Thank you. Thank you. Mr. Hallowell. Good morning, Your Honors, and may it please the court, Adam Hallowell for the United States. This court squarely held in Preston that Pennsylvania conspiracy to commit robbery has as an element, the use, attempted use or threatened use. OK, but the Supreme Court since then has has clearly said that the the elements of inchoate offenses that don't include violence for that inchoate offense should not be considered. And aren't we bound by what the Supreme Court says? Well, the Supreme Court addressed an inchoate offense in the Taylor case of this year, 2022. But I think it's important to distinguish Preston from that case because the analysis in Taylor involved an inchoate offense, which did not have as an element, the use, attempted use or threatened use of physical force. Neither side disputed in that case that attempted Hobbs Act robbery can be committed without the use of force or threatened use of force. And that question has to be addressed separately for every statute to which the categorical approach is applied. And that's what this court was doing in Preston. It was looking at a different statute in a different jurisdiction, Pennsylvania conspiracy to commit robbery under Section 903 and asking, what are the elements of that offense, that separate offense? And the holding of Preston was that it does have the use, attempted use or threatened use of physical force that necessarily must be proven to support a conviction for conspiracy to commit a violent felony in Preston's words. And so the district court, even if the error had not been waived and had not been invited, which it was, the district court did not err in following Preston. And I think it's important to look at exactly why Preston was consistent with the 1990 Taylor case, which first explained the categorical approach. That case predated Preston and Mathis and the other cases from the Supreme Court that have elaborated on the categorical approach haven't changed the underlying approach that Preston applied. And so Preston, for two reasons, was faithful to the 1990 case in applying the categorical approach. First, because it did focus exactly on the elements of what does a Pennsylvania jury need to find in order to convict someone of conspiracy to commit robbery? That was the discussion all the way through Preston. Not, is this the typical case, you know, did not use the residual clause in reaching this condition, but what are the elements that necessarily must be proven, must be a part of that conviction? That is all the way through. What are those elements? Those elements are the agreement to commit the crime, the intent to commit the crime, and the overact requirement. And so Preston doesn't... Overact does not have to be a violent act. Well, I'm not sure that's so clear under the Pennsylvania case law. And Preston... I'm not saying what the... I mean, it has to be an overact. Correct. But isn't it a basic legal concept that overact does not have to be the completed crime. It can be a step of the crime which indicates that the crime is going to go forward. And that is not necessarily a step that involves force. There are plenty of... There are conspiracy statutes that are written that way, that take that view of an overact requirement. The Pennsylvania cases, I'm not sure, have clearly said, have clearly contradicted Preston in saying that a use of force is not necessarily part of that overact requirement. And that's the analysis that Preston reached. None of the Pennsylvania cases that have been cited by the appellant, none of the appellate Pennsylvania cases have come out the other way, contradict Preston's statement. That that use of force is something that a jury must find in order to convict. Of conspiracy? Of conspiracy to commit robbery. Correct. And the other reason that we can see that Preston is following Taylor 1990 and the categorical approach is that it does not at all dwell on the facts of Mr. Preston's offense. It doesn't say, here's what actually happened in Preston's conspiracy to commit robbery. And so there was an actual threat to use force. We know what happened. That's not an error that Preston committed. Are you saying that we cannot analogize? I'm sorry? That we cannot accept the lessons we have learned from other types of offenses and apply it to our interpretation of the Pennsylvania robbery law, our interpretation of other laws? Are we strictly going down one path as to the Pennsylvania robbery law? Or can we consider other types of conspiracy cases where there was a consideration of whether the concrete step to complete the offense included violence or use of force or not? If this were an open question, Judge Roth, this court absolutely could consider the whole universe of other cases interpreting conspiracy law. It would have to look at Pennsylvania cases, Pennsylvania jury instructions, Pennsylvania treatises, the charging instruments. It would do all of the things that the categorical approach requires. The problem for Henderson is that this court already crossed that bridge in its presidential decision in Preston. And that's binding on this panel as to that particular statute. And this court has cited Preston, not just the case itself, but its conclusion about Pennsylvania conspiracy to commit robbery several times since then in recent years. And so... How do you maneuver around Abreu? I don't understand that. Under Abreu, in Abreu we had a statute that all sides agreed could only qualify as a crime of violence under the guideline commentary. There was a concession. There was not a dispute that the elements of that crime did not require, of attempted New Jersey conspiracy to commit robbery, did not require the use of force or the threatened use of force. And Preston reached a different conclusion about Pennsylvania law. Henderson's real argument here, Henderson's real argument is not that Preston misapplied the categorical approach. It's not that Preston is inconsistent with later Supreme Court cases. It's the argument that Preston simply was incorrect in its analysis of Pennsylvania case law. It correctly applied the correct approach, but misanalyzed Pennsylvania case law. And that is not an error, even if that were the case. That's not an error that would allow this panel to reconsider Preston. And it may be something that the en banc court at some point would seek to take up. But in this case, we have the fact that Henderson waived this issue and invited any error. That is another aspect of the argument that we can go into between forfeiture and waiver. But your presumption that there is waiver here, you're saying we can't consider Preston because he waived it. And that, I think, is jumping ahead to another argument to try to avoid what you should be saying in the question that I asked you. Yes, Your Honor. So the conspiracy that we have here is its own separate statute under Pennsylvania law. It has not been overruled in terms of Preston's analysis of what a Section 903 conspiracy to commit robbery requires in this case. Other conspiracies in other jurisdictions, other attempted crimes, such as attempted Hobbs Act robbery in the Taylor case from this year, they may have different elements. All of those statutes have to be analyzed on their own terms. What we're dealing with here is a square holding that Pennsylvania conspiracy to commit robbery does have this element that's required by the force clause. That's the argument, Judge Roth. And so in this case, we don't have any problem with Nasir or Abreu because the guideline commentary is not implicated here. Preston was an ACCA decision. It had no need to rely on commentary. There wasn't commentary for ACCA. And so this Court's cases have made clear that ACCA and the identical elements clause in the career offender guideline should be applied together. And so really, if there's any conflict between Preston and Abreu, this Court would have to follow Preston as the earlier decision. But it's possible to read those two decisions together consistently because of the different statutes that they were analyzing. Is there any basis for interpreting or understanding violent felony and crime of violence as synonymous? I think they have different elements, Judge Greenaway. They have, so to speak, they have different enumerated offense clauses, certainly, between ACCA and the career offender guideline. And so for that reason, they're not synonymous. But when we're looking at the elements clause that is identical between those two legal provisions, then there's no basis for distinguishing one from the other. The holding as to Preston or in any elements clause case that a predicate has as an element the use of force or attempted or threatened use of force, that applies equally in ACCA and in the career offender context. And I'm not aware of a Third Circuit case that has distinguished those two situations. So to what effect should we think of the distinction that the guideline application note makes between violent felony on the one hand and crime of violence on the other? I haven't looked directly at that application note, Judge Greenaway, but I would say that... Would you like me to share it with you? Of course. Yes, please. So it's application note one under 4B1.4, and it says it is to be noted that the definitions of violent, you know, quote, violent felony, close quote, and serious drug offense, quote, and close quote in 18 U.S. 924E2 are not identical to the definitions of crime of violence within quotes and controlled substance offense within quotes used in 4B1.1, a career offender. To me, I would read that as most clearly pointing to the elements clause and to the distinction between the serious drug offense and the controlled substance offense, which have more divergent distinctions. So those, you know, certainly you can have crimes under those sub provisions that meet one definition, but not the other definition. But as far as the elements clause, the elements clause of those two provisions has the exact same text. And it is a legal question whether a predicate offense has, as an element, the use, attempted use, or threatened use of physical force. And so that holding in Preston as to Pennsylvania conspiracy to commit robbery under ACCA is equally applicable in the career offender context. If there are no further questions on the merits of Preston, I would like to briefly touch on the waiver issue. Because what we have here is that knowing. Before you do that, we won't lose track of that. I want to talk about polygraphs. Yes. Okay. So you heard, you heard the discussion between your colleague and the panel about polygraphs. It seems that, you know, Lee was obviously in the context of a sex offender. There does seem to be some dicta that would interpret the possible imposition of that as a condition of supervised release in a broader context. I'm concerned about that because, you know, the slippery slope argument that we've known for our entire careers could be applicable here. And that is, you know, if you started here, you could apply it in every situation, particularly when the district judge says, you know, it's a great way to foster compliance. You can do that about everything. You know, did you, did you go get a job? Did you make 10 applications like we agreed? You know, take the polygraph. So help us think about that. Judge Meade has suggested that one way of thinking about it is let's get the district court to put its specific thoughts on the record rather than this general reference. But what I'm more concerned about is can we apply the sort of the teachings of Lee in broader context like this one? Yes, I think this court can do that. I think the analysis in Lee as to the supervised release statute, 3583D, is general. It allows a, it allows a sentence in court. It allows this court, if the conditions in D are met, in order to say that this polygraph testing is appropriate in sex offense cases and in non-sex offense cases. Lee doesn't limit its analysis of 3583 to the sex offense context. And so if a district court, if a district court believes, and just to drill down into those, I suppose, you know, there's no greater deprivation of liberty, Lee says, from submitting to a polygraph test than there is ordinarily from answering questions truthfully from a probation officer, which is a typical condition. And it's also reasonably related to conditions of deterrence and protection of the public and correctional treatment. And so those conditions, they do make polygraph testing available in cases other than sex offense cases. And the district court, 3583, allows the district court to impose a condition that meets those three factors. Any condition that is considered appropriate by the district court, as long as it satisfies those factors. So tell me, because those factors are so general and would seem to have broad application, what would be an instance when you would say that the imposition of that condition would not be appropriate? I think it, I mean, certainly if the condition were not adequately explained by the district judge, if there were no basis for that condition. You mean like here? Well, no, Your Honor, because in response to the, two responses to that. First of all, the district court did say I'm imposing this condition to further compliance with the supervised release conditions. Is there any condition that could be articulated in any way in which that wouldn't be a response, in which case we would apply in every case? I think it's possible that the polygraph testing could be applied as a supervised release condition if a judge found it to be appropriate, generally, as a test. Because the, as a supervised release condition, because 3583D gives judges a broad discretion to use, to impose conditions that are going to further the bond of trust between the defendant and the court, which is a significant component of supervised release. And so a judge might find that polygraph testing is appropriate. Here. And you, and you believe that that's all contained in this record, the kinds of findings you're talking about? It's not, it's not elaborate enough. It's not an elaborate finding that we might like from the district judge. But for the limited polygraph condition that we have here, I would submit that it's appropriate. Because we don't actually, Judge Greenaway, have a condition that allows the probation officer to administer a polygraph test to answer any of the questions that you ask. This is a condition on the text of the judgment that's limited to a rule of mental health treatment as a, as a component of the mental health treatment program. And only if it's imposed as part of that program does the judgment allow polygraph testing. And so there's been no. I'm going to interrupt you, and I do beg your pardon. Here's the problem that I have, right? The, the transcript doesn't reflect a statement by the district court that I do it in all of the mental health cases I have. He says, I, I, I, I do it in all of my cases. Well, actually, I, I, I suppose I should try to quote him exactly, but we don't have the time. You, you'll agree it, I, I think he said I, I do it in all of my cases. And he certainly. Yes. Didn't limit those to mental health cases. Correct. So, so that, that's the problem that I'm trying to deal with. Because if the case, if the record were, I believe it should be imposed in cases in which there's a mental health treatment element, we'd be discussing it in a different context. It's the more broad application that is concerning. It seems like it might be a nice nexus to. If we were to remand this case for resentencing, which I know you don't want us to do, but perhaps we might do, what instruction should the district court then give if, if the district court orders polygraph testing as to the limitations and the purposes of that testing? I think the judge would have to articulate reasons why the polygraph testing would be reasonably necessary to further the protection of the public correctional treatment and the other factors. And, and would need to explain case specific reasons that this, this court could ask for why this defendant would appropriately be subject to that condition. Whether it's a condition that is limited to mental health treatment or a condition across the board. And I do think that this court should leave scope for judges who, who have decided that polygraph testing is an appropriate means of supervising a defendant and protecting the public. In a case such as this one where there's no sex offense, but there is repeated drug use, there's repeated drug sales, there's involvement with firearms, and there is repeated violations of parole. For that bond of, that bond of trust to be strengthened by polygraphing by the probation officer. Here's the, here's the, here's another issue we, we know that there are some intrinsic problems to polygraph testing, right? So what, what you're asking, because I think your response to Judge Roth's question was, yeah, let's put it on the record and a broader application's fine. If, if I'm giving you too much, tell me, but I think that's what I heard. Isn't, isn't there a problem with the, the, the, the intrinsic inexactitude of polygraph tests? So building this trust between the probationer and, or the person on supervised release and the court. The person fails the test. Person's nervous. Person thinks that, you know, they're, they're gonna be incarcerated because, you know, they, they relate for work or something, but, so they were nervous with regard to the questions that are of a more dire nature. Shouldn't we be concerned about a broad application of what we know to be an intrinsically problematic test? I think that's, that's something the court should take into account, and there are evidentiary restrictions on how polygraph tests can be used at trial. And some of that is because they're not so reliable that they would be admissible and that it would overrule, that their admission would outweigh the province of the jury in deciding whether someone has testified truthfully or falsely. But polygraph testing does have value. It is still used in investigations and in supervised release context. I think it's continued use in sex offender cases shows the value of, of that technique. And so, you know, this is, this is an issue the government's position is that's confined to the sound discretion of the district judges. And so, whatever, whatever clear statements are required by a district judge to impose that condition, it should still be an option that's left up to district judges as one possible option that they can consider. Okay, waiver versus for, for Richard? Yes, Your Honor. So talking about, talking about waiver versus forfeiture and why the Preston issue was originally waived and invited in district court by Henderson. This is a classic case of waiver and not forfeiture. Because rather than simply not objecting to the career offender enhancement, Henderson throughout the sentencing memorandum, throughout other filings, and at the sentencing hearing itself, repeatedly said that the career offender guideline applies. This conspiracy to robbery qualifies as a career offender predicate. And did not, did not contest that, but treated it as the framework for other arguments that were raised at sentencing. And that allowed Henderson to argue, and that ended up being a factor in the district court's focus on, the mental health issues that led to the district court's five-year downward variance from the calculated guideline range. So if you look at cases like Robinson, it's very similar to that. In Robinson, which is a civil case, but the defendant accepted all through trial, the plaintiff's interpretation of the law, the legal framework in which they were operating, agreed, agreed. But if the law changes then, are they bound by their earlier interpretation of the law? If the law changes, they may not be bound by it. And that's, that's an exception to waiver, and it's, it's an exception to invited error doctrines. Although it is, it is a knowing acknowledgement of the right, even if there is some change in the law afterwards. The right is the right to challenge the career offender predicate. And so, and so if this court, you know, in the intervening four years, comes out with arguments that lend greater support to an argument, the right has still been waived. But regardless of that, for the reasons we discussed earlier, there's no intervening change in law between the 2018 sentencing and today that would change the categorical approach framework that applies. Well, I think your opponent believes that there is a significant change in the law, and that the later position, despite the earlier statements, the later position is consistent with the change in law. Well. So that therefore, it's forfeiture and not waiver. That's something that, that's something that Henderson had the ability to argue in 2018. That this. Can't all be pressure. We can't, we can't all be pressure. But this court does ask litigants to preserve arguments, even when they are in conflict with existing case law. That's what happened in the Nassir case, where there was an argument raised that Hightower was inapplicable. Mr. Nassir raised that argument in contravention of existing case law, and ultimately carried it up to the Enbank court and prevailed. That's something that this court asks litigants to do, demands litigants to do, in order to preserve arguments. And so both under the waiver point, and just a last point on waiver, that the Glass case is distinguishable from this case. Because there, if you look at the docket in that case, the defendant actually did object to career offender status. On it, making a different argument. But that argument, that issue, was much more in dispute than we have here. But even if waiver doesn't apply, we have clearly an error here that is not plain. Whatever other decisions about other statutes may have intervened between 1990 and today, Preston still maintains precedential force. At the very least, there's open to reasonable dispute as to what that continuing effect is. And so because there's still concern, because the court is still considered to cite it favorably, this court should conclude that Preston is not a plain error, and the district court was not in violation of Preston in order to rule that. And also, the fourth prong of a lot of it was not met here, under the fairness and integrity, given all of the reasons that we've discussed. Okay, thank you very much. Thank you. Go ahead, please. Thank you. There's a lot that can be said about why Preston was wrongly decided. But I think the clearest path for this court to recognize this abrogation, and to decline to follow it here, is by acknowledging the conflict between Preston's core holding, the subsuming holding, and the Supreme Court's binding precedent in Mathis and Taylor of this year, and a number of other cases. And so, specifically Taylor, I recognize that it dealt with attempted Hobsack robbery, a different offense. But that doesn't mean that we can just swat it away and not look to the rationale, the analysis there, and glean important lessons about how the categorical approach properly applies to inchoate offenses. And the Supreme Court addressed arguments that that attempt offense met the elements clause, which is what the government was arguing, and rejected those arguments, finding that when it actually looked at those elements of the attempt offense, which included an element of intention to commit an unlawful taking by force or threat of force. So, that was not an element of the attempted use of threatened use of force. And so, Taylor is directly in conflict with this court's analysis in Preston, in which it held that the elements of conspiracy subsumed the elements of robbery, rather than keeping to the actual elements of conspiracy. And so, when my opponent talks about the elements of Pennsylvania conspiracy, somehow he forgets the law that I cited in my brief. Page 18 of my brief talks about Pennsylvania law interpreting the overt act requirement. It's clear as day, as Judge Roth indicated, that the overt act can be a completely innocent act. It doesn't even need to be a criminal act, let alone a violent act. So, it's very obvious that that is not an element that requires the use, attempted use, or threatened use of force. The suggestion that this is somehow unsettled or unclear on this record is plainly wrong and this court must reject it. The same can be said for the remaining two elements, the requirement of an intention to complete a robbery. For the reasons that the court stated in the Taylor case, that doesn't get you where you need to go under the elements clause. And so, too, with an agreement to do an unlawful act, even if the agreement is to do a violent act, because that's not enough under the force clause. The force clause is very clear as far as the element that is required to satisfy the element's inquiry. And so, I think that, you know, for all of those reasons, there is no basis to distinguish the Pennsylvania conspiracy offense that we have here from the New Jersey conspiracy offense that was an issue in Nebrew. Like Pennsylvania conspiracy, New Jersey conspiracy also requires that juries be instructed as to the elements of the object offense. And like, you know, in the Pennsylvania conspiracy context, the jury has to make some finding about what the object is, but that's not a basis to then import those elements of the object offense into the categorical analysis. And that's because a person can be convicted of conspiracy without being convicted or found guilty of the object offense. So, those elements need not be found. As far as my opponent's waiver argument, I didn't totally understand what he was saying. I heard at one point an acknowledgement that a change in intervening change in the law could make a difference and could mean that this court should reach the issue. And certainly that must be the case. We can't have defendants forever waiving issues, even when the law materially shifts beneath their feet while they're on appeal. This is precisely the sort of error that this court can address on plain error. Plain error review exists so that we can promote uniformity when there is a change in the law that impacts a number of cases. It's not a scorecard for district court judges. And as far as distinguishing Glass, this court, in its opinion, said that Glass involved repeated concessions by the defendant that the career offender guideline applied. And so, by this court's own rationale in Glass, it's really indistinguishable from this case. And this court must follow Glass and apply plain error, not waiver. As far as the polygraph condition, I think to say here that a polygraph testing provision involves no greater deprivation of liberty than having your probation officer be allowed to ask you questions and a requirement that you answer truthfully, that's like saying that an ankle bracelet for purposes of electronic monitoring imposes no greater condition or no greater constraint on liberty than, for example, location restrictions or a requirement that you remain in the district. Using these types of technology in order to further supervisory goals, however well intended, does involve a substantially greater deprivation of liberty. And that means that there must be a basis for doing so, not just we can do this in every case because it makes supervision easier, it makes it easier to detect wrongdoing. That just goes well beyond what's allowed under 3583 of the statute. If there are no further questions, I would ask that this court reverse remand for resentencing without the career offender enhancement and without special commission five. I just want to talk about the greater deprivation of liberty that you mentioned. Given the lease findings with regard to both self-incrimination and the general application of the polygraph in a supervised release context, it sounds like that ship has sailed. Maybe I'm wrong on that. I'd love to hear you specifically respond to that on this notion of a greater deprivation of liberty. I'm afraid I'm not necessarily familiar with the exact portion of we that your honor is referring to. My point is really about the fact that these types of technologies inevitably involve an enhanced deprivation of liberty because they're just more intrusive. The polygraph is more intrusive than the probation officer simply asking questions and holding the defendant to a answer those questions truthfully. I'm looking at two points of Lee. One is, I know you don't have it in front of you. I'm happy to read it slowly. It's on page 214. The court says, moreover, we find that the polygraph condition does not impose a significantly greater demand on appellant than that placed on any other probationer. And the other is on page 217, we find the polygraph condition is reasonably related to the protection of the public as well as the rehabilitation of the appellant, different somewhat than here. The I know that could be interpreted as being related to the fact that he was a sex offender, but I think looking at those two, I'm not sure I could get to your greater deprivation point. That was my only point. I understand. I do think those statements have to be read in the particular context that challenge arose given the nature and circumstances of that particular defendant and that particular offense and the risk posed by reoffense there. But I certainly think notwithstanding the court statements and Lee, this court could acknowledge that a polygraph condition, it involves a greater intrusion than a standard condition requiring truthful answers to a probation officer's questions. All right. All right. Well, thank you both very much. We'll take the matter under advisement.